GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
JACQUELINE SCHESNOL
Assistant U.S. Attorney
Arizona State Bar No. 016742
Email: Jacqueline.schesnol@usdoj.gov
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-08-00001-PHX-GMS |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| vs. | |
| Arturo Reyes Trujillo, | |
| Defendant. | |

The United States, by and through undersigned counsel, opposes Defendant Trujillo's Motion for Compassionate Release. The government respectfully requests this Court deny his request.

Defendant Trujillo has not shown there are extraordinary and compelling reasons warranting his immediate release. Due to his asthma[1] Defendant Trujillo may have a slightly increased risk of serious illness from COVID-19, which could present an extraordinary and compelling reason allowing compassionate release during the current pandemic. However, as set forth in his motion, Defendant Trujillo previously had COVID-19. (Doc. 364.) Further, on May 19, 2021, Defendant Trujillo was offered and rejected the Moderna vaccine. *See* p. 23 of Attachment 1, filed under seal. Therefore, he no longer

---

[1] Defendant Trujillo did not have asthma at the time the presentence report was drafted. (Doc. 314 ¶ 44.)

presents extraordinary and compelling reasons justifying compassionate release. In addition, the Court should deny Defendant Trujillo's motion for release because he poses a danger to the community. Finally, the § 3553(a) factors weigh against a sentence reduction.

## BACKGROUND

The underlying facts of the offense that gave rise to this conviction are set forth in the plea agreement. Between approximately January 2003 and July 2007, Defendant Trujillo, based in Tucson, hired a network of individuals to transport large shipments of cocaine throughout the United States and bring millions of dollars back to Arizona. Law enforcement officers seized over 77 kilograms (169 pounds) of cocaine and over $490,000 linked to this criminal activity. Defendant Trujillo was the head of this drug trafficking organization. (Doc. 297.)

According to the presentence report ("PSR"), Defendant Trujillo was before the Court for his first felony conviction, which consisted of four years as the leader or organizer of a multi-state conspiracy to deliver hundreds of kilograms of cocaine throughout the United States and launder the proceeds. Defendant Trujillo's final offense level was 41, with a criminal history category of I, resulting in an advisory range of 324-405 months' imprisonment; the presentence report recommended a 324-month sentence. (Doc. 314.)

Defendant Trujillo sought a sentence of 10 years. (Doc. 315.) The government recommended a 262-month sentence.

On March 7, 2016, for two counts that ran concurrently, the court sentenced Defendant Trujillo to a total of 262 months in the Bureau of Prisons ("BOP") and five years of supervised release for committing the crimes of possession with the intent to distribute of cocaine and conspiracy to commit money laundering. (Doc. 320.)

Defendant Trujillo is housed at FCI Safford; his projected release date is May 6, 2031. Therefore, Defendant Trujillo has served less than half of his sentence. Trujillo made a request to the Bureau of Prisons for compassionate release on December 16, 2020, which was denied on January 6, 2021.

**BOP'S RESPONSE TO COVID-19**

BOP has taken aggressive steps to try to protect inmates' health and stop the spread of COVID-19 in its facilities. "[M]aintaining safety and security of BOP institutions is [BOP's] highest priority." Updates to BOP COVID-19 Action Plan: Inmate Movement (March 19, 2020), *available at* https://www.bop.gov/resources/news/20200319_covid19_update.jsp. Among other things, BOP has put health screening procedures in place, visits have been restricted, and inmate movement is being reduced to help limit possible exposure in BOP facilities. Individual facilities have adopted "modified operations," including staggered meal and recreation times, to promote social distancing. *See* BOP COVID-19 Action Plan: Agency-Wide Modified Operations (March 13, 2020) ("BOP Action Plan"), *available at* https://www.bop.gov/resources/news/20200313_covid-19.jsp.

In addition to the procedures in place to limit transmission of the virus within its facilities, with the FDA's recent emergency authorization of two COVID-19 vaccines, BOP is working with the CDC to distribute and administer vaccines to staff and inmates. When an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff—who come and go between the facility and the community—present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community. Remaining doses of the vaccine at each location are then provided to inmates based on priority of need in accordance with CDC guidelines. https://www.bop.gov/coronavirus/index.jsp (last visited August 13, 2021). BOP has distributed throughout its facilities 216,832 vaccine doses, and has administered 210,164 vaccine doses. https://www.bop.gov/coronavirus/index.jsp (last visited August 13, 2021). At FCI Safford, where Defendant Trujillo is currently housed, 101 staff[2] have been fully inoculated with both doses of the vaccine, and 505 of the 814 inmates have been fully inoculated. https://www.bop.gov/coronavirus/index.jsp (last

---

[2] BOP staff who have received their vaccination in the community rather than the BOP facility are not reflected in this number. https://www.bop.gov/coronavirus/index.jsp (last visited February 4, 2021).

visited August 13, 2021). BOP expects to offer a vaccine to every inmate in its custody by mid-May 2021. Statement of Director Michael D. Carvajal to the United States Senate Committee on the Judiciary (April 15, 2021), *available at* https://www.bop.gov/resources/news/pdfs/statement_20210415.pdf.

Finally, BOP is taking dramatic steps to transfer vulnerable inmates to home confinement in appropriate circumstances. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") substantially increased BOP's statutory authority to transfer inmates to home confinement. *See* CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (March 27, 2020) (allowing BOP to "lengthen the maximum amount of time the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2)). The Attorney General directed BOP to exercise its home-confinement authority broadly to protect "the people in [their] custody," taking into consideration prisoners' age, vulnerability to COVID-19, and other factors. *See* Attorney General Memorandum for Director of Bureau of Prisons Re: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (March 26, 2020), *available at* https://www.justice.gov/file/1262731/download.

The Attorney General also expanded the cohort of inmates who can be considered for home release, responding to changing conditions at certain institutions. *See* Attorney General Memorandum for Director of Bureau of Prisons Re: Increasing the Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/1266661/download.

Consistent with these directives, BOP is devoting all available resources to assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program and then processing those inmates for transfer as quickly as possible. Between March 26, 2020 and the date of this filing, BOP has placed an additional 29,878 inmates on home confinement. *See* BOP, COVID-19 Coronavirus (updated daily), *available at* https://www.bop.gov/coronavirus/index.jsp (last visited August 13, 2021 at 7:30 a.m.).

BOP's efforts to transfer vulnerable inmates to home confinement in appropriate circumstances are relevant here because defendant has already been, or is being, considered by BOP for a transfer to home confinement. If he is not suitable for home confinement under BOP's priority program, then he is likely not a suitable candidate for compassionate release.

## ARGUMENT

**I.  Legal Framework for Compassionate Release.**

District courts generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]" 18 U.S.C. § 3582(c)(1). The Director of the Bureau of Prisons may make a motion under this section. Following the implementation of the First Step Act in 2019, an inmate may also file a motion, subject to the exhaustion requirement described below.

Compassionate release is both a drastic and permanent remedy; therefore, it is subject to several strict statutory conditions. A defendant bears the burden of proving he meets all elements of eligibility for a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing cases); *United States v. Greenhut*, No. 18-CR-48-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (defendant bears the burden of establishing entitlement to sentencing reduction); *see also United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility for sentencing reduction); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

**A.     Administrative exhaustion is required.**

First, a district court can consider a defendant's request for compassionate release only after the defendant makes an administrative request and waits 30 days for a response. Specifically, the statute provides a defendant can file a motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also*, *e.g.*, *United States v. Weidenhamer*, No. CR-16-01072-PHX-ROS, 2020 WL 1929200, at *2 (D. Ariz. Apr. 21, 2020) ("There is no indication in the statutory text … [that] Congress meant to confer on the court the authority to waive exhaustion.") ("*Weidenhamer II*"); *United States v. Tomlinson*, No. CR-18-08374-002-PCT-DWL, 2020 WL 1935522, at *1 (D. Ariz. Apr. 22, 2020) (quoting *Weidenhamer II*).

Defendant Trujillo made a request for compassionate release to BOP. That request was denied in January 2021. He has met the exhaustion requirement.

**B.     Extraordinary and compelling reasons are required.**

Second, even if the exhaustion requirement is met, a district court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. § 3553(a)]," if the court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[3] Congress has tasked the Sentencing Commission, not the courts, with

---

[3] Alternatively to the "extraordinary and compelling reasons" requirement, § 3582(c)(1)(A)(ii) also allows for compassionate release where "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community . . . ." Based on Defendant Trujillo's age (49 years old) and how long he has served in prison (under nine years), this subsection is inapplicable to Defendant Trujillo's Motion.

determining what constitutes an "extraordinary and compelling reason" that can justify compassionate release.

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A), found at United States Sentencing Guidelines (U.S.S.G.) § 1B1.13. *See Dillon*, 560 U.S. at 827 (determining that, because § 3582(c) permits a sentencing reduction only where it is "consistent with applicable policy statements issued by the Sentencing Commission," such policy statements are binding on a court determining eligibility). The Ninth Circuit recently noted, however, that the Sentencing Commission has not updated § 1B1.13 since the First Step Act amended § 3582(c)(1)(A) to provide that motions may be filed not only by the BOP Director, but also by a defendant. *United States v. Aruda*, D.C. No. 1:14-cr-00577-DKW-1, 2021 WL 1307884, at *3 (9th Cir. April 8, 2021). The court went on to hold that when a court considers a motion brought by a defendant under 18 U.S.C. § 3582(c)(1)(A), § 1B1.13 is not a binding "applicable policy statement."[4] 2021 WL 1307884, at *4. Accordingly, under *Aruda*, there is no binding policy statement currently governing compassionate release motions filed by defendants.

Nonetheless, the Court may be guided by § 1B1.13, which defines "extraordinary and compelling reasons" that make a defendant eligible for compassionate release for the purposes of a compassionate release motion filed under the same statutory provision by the BOP director. *See Aruda*, 2021 WL 1307884, at *4 (section 1B1.13 "may inform a district court's discretion" in evaluating compassionate release motions). These reasons include: (1) "a terminal illness"; (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of

---

[4] The Sentencing Commission currently lacks a quorum of voting members and is therefore unable to update any Sentencing Guidelines. *Aruda*, 2021 WL 1307884 at *3 n. 1. The last public meeting of the Sentencing Commission was on December 13, 2018. United States Sentencing Commission, http://www.ussc.gov/policymaking/meetings-hearing (last visited April 26, 2021).

the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, n.1 (other grounds omitted).

### C.  Relief is rare and within the Court's discretion to deny.

Third, even for defendants who are statutorily eligible, compassionate release is a rare and extraordinary remedy, within a district court's discretion to deny. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding district court did not abuse its discretion by denying compassionate release despite defendant's eligibility for that relief); *United States v. Mangarella*, No. 06-CR-151, 2020 WL 1291835, at *2–*3 (W.D.N.C. Mar. 16, 2020) (citation omitted); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("most courts treat compassionate release 'due to medical conditions [a]s ... a rare event."). This reluctance to expansively apply compassionate release is grounded in a concern that any less narrow application would yield significant sentencing disparities. *United States v. Ebbers*, 432 F.Supp.3d 421, 430 (S.D.N.Y. 2020).

## II.  Defendant Trujillo's motion should be denied on substantive grounds.

Defendant Trujillo's motion should be denied because he fails to demonstrate extraordinary and compelling reasons that justify his immediate release and a reduction in sentence. Further, Defendant Trujillo poses a danger to the public and should not be released. Finally, the § 3553(a) factors weigh against the defendant's release and a reduction in his sentence.

### A.  Defendant Trujillo has not shown extraordinary and compelling reasons warrant his immediate release.

As the government has explained, the court may be guided by a policy statement that allows for consideration of compassionate release where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The government acknowledges that during the current COVID-19 pandemic, the diagnosis of a condition identified by the CDC as increasing the risk of an adverse outcome from

COVID-19 meets that definition, because Defendant Trujillo's asthma may render him less able to protect himself against an unfavorable outcome from the disease.

But that is no longer the circumstance in this case.  In December 2020, Defendant Trujillo contracted and recovered from COVID-19.  According to the CDC, cases of reinfection with COVID-19 have been reported but remain rare. *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html  Additionally, in May 2021, Defendant Trujillo was offered the first dose of the Moderna COVID-19 vaccine, and he refused it.

The vaccine was granted emergency use authorization by the FDA upon its conclusion that in extensive testing the vaccine proved 95% effective in preventing infection, and virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19. *See* FDA Decision Memorandum,

    Moderna - Dec. 18, 2020, https://www.fda.gov/media/144673/download.

    Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

Defendant Trujillo has no known medical contraindication for the vaccine.

Thus, Defendant Trujillo, notwithstanding the risk factor he presents, has the ability to exercise "self-care" against the virus by receiving the vaccine.  He simply elected not to.  For that reason, he no longer presents any extraordinary and compelling reason allowing compassionate release, and the motion should be denied. *See, e.g.*, *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. McBride*, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) (relief denied in part because the inmate refused the vaccine; "Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison").

Defendant Trujillo attempts to draw a parallel between his situation and that of

Defendant Hernandez Sandoval in the Western District of Washington. (Doc. 364 at p. 5-6.) There is a significant difference between that case and Defendant Trujillo. Hernandez Sandoval was not only diagnosed with obesity and Type II diabetes, but also was 65 years old and under an immigration detainer. Additionally, Hernandez Sandoval accepted the first dose of the vaccine and had not fully recovered from COVID-19. The most factor in Hernandez Sandoval's situation is that he was a kidney transplant recipient. *See United States v. Hernandez*, W.D. Wash CR14-5105-RBL. (Doc. 617.)

### B. Defendant Trujillo is a danger to the public and should not be released.

In addition, Defendant Trujillo's motion should also be denied because he remains a danger to the community. This Court should not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See* USSG § 1B1.13; *see United States v. Gotti*, 433 F. Supp. 3d 613 (S.D.N.Y. Jan. 15, 2020) (release was inappropriate regardless of extraordinary and compelling circumstances because defendant posed a continuing danger to the public); *accord United States v. Urso*, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); *United States v. Applewhite*, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-old inmate based on danger).

Nothing about the COVID-19 pandemic reduces Defendant Trujillo's danger. Danger to the community is not limited to physical violence. It can take different forms. *See, e.g., United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Gentry*, 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006).

The record here precludes a finding that Defendant Trujillo is no longer a danger. To the contrary, Defendant Trujillo is incarcerated for very serious felony convictions.

### C. The § 3553(a) factors weigh against release.

<u>Nature and Circumstances of the Offense</u>

First, 18 U.S.C. § 3553(a)(1) requires courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" when imposing a sentence. The nature and circumstances of the offense, when balanced with the history and characteristics of Defendant Trujillo necessitate his motion for compassionate release be denied. While this conviction accounted for Defendant Trujillo's first felony conviction, it was an extremely serious crime.

<u>Afford Adequate Deterrence to Criminal Conduct</u>

Second, pursuant to 18 U.S.C. § 3553(a)(2)(B), the sentence must "afford adequate deterrence to criminal conduct." Defendant Trujillo's criminal activity had nationwide impact, and he has not served even one-half of his sentence. The government suggests that releasing Defendant Trujillo early would not deter him from committing future crimes and could possibly imply there are not serious consequences for serious conduct.

<u>Protect the Public from Further Crimes of the Defendant</u>

Third, pursuant to 18 U.S.C. § 3553(a)(2)(C), the court should consider the need "to protect the public from further crimes of the defendant" when imposing a sentence. There is a need to protect the public from Defendant Trujillo's criminal behavior.

<u>Provide the Defendant with Needed Correctional Treatment</u>

Fourth, pursuant to 18 U.S.C. § 3553(a)(2)(D), the court must consider the need for the sentence imposed to provide a defendant with needed correctional treatment in the most effective manner. It is unclear whether Defendant Trujillo is in need of substance abuse treatment, but if he could benefit from treatment that can be received that while incarcerated.

<u>Unwarranted Sentence Disparities</u>

Fifth, pursuant to 18 U.S.C. § 3553(a)(6), the court must consider the need to avoid unwarranted sentence disparities. Defendant Trujillo has not demonstrated

extraordinary and compelling reasons to grant his release. To do so would result in an unwarranted sentencing disparity.

## CONCLUSION

Defendant Trujillo has not shown there are extraordinary and compelling reasons warranting his immediate release. Further, Defendant Trujillo poses a danger to the community. Finally, the § 3553(a) factors weigh against a sentence reduction. For all the foregoing reasons, Defendant Trujillo's motion should be denied.

Respectfully submitted this 13th day of August, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

s/Jacqueline Schesnol
JACQUELINE SCHESNOL
Assistant U.S. Attorney

**Certificate of Service**

I hereby certify that on this 13th day of August, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

*Carlos Brown*
Attorney for Defendant

s/ Mary Simeonoff
U.S. Attorney's Office